versus BASF I think we're ready whenever you are. Good morning, Your Honors. Jennifer Sweezy on behalf of the Patent Owners, and I would like to reserve three minutes for rebuttal. We raised two main points in our brief. First, on the prenatal patient case, and second, on the object of evidence of non-obviousness. And while both issues warrant attention, I would actually like to take them in reverse order this morning. The reason is because, regardless what the court decides on the prenatal patient case, whether you agree with us or not, our patents should have avoided the trap of hindsight based on the object of evidence. In particular, we had powerful evidence of commercial success, and on that point, the Board actually said our evidence would have been persuasive if left unchallenged. So let me address two legal errors that the Board made with respect to that evidence. First, it misread this Court's decision in Midwest-Vaco. This is not like Midwest-Vaco. And second, it did not separately analyze a claim, Claim 9 of the 747 patent, that even under the Board's own reasoning would have compelled upholding Claim 9. So I'll start with the Midwest-Vaco point. And just a step back, on the whole point of commercial success evidence, which I think the Board missed sight of, which is to show whether we have a real advancement here or a trifling one. So when you have others in the market adopting a technology over prior art, that's a demonstration of non-obviousness. And that's what we had here. We had evidence showing that in a significant market, significant sales in a relevant market, 80% of those sales are using our claimed technology. That's a powerful indication. That's exactly what this evidence does to guard against the natural tendency to use hindsight when determining and evaluating obviousness. And that's the evidence that the Board said would have been persuasive. Why is it not relevant to look at? You were looking at one truck. Was it number 8 or something like that? And that's what the Board was concerned about. They didn't say there's no evidence of commercial success. They just pointed out that when you're determining commercial success, if a patent covers 400 products and you come in and show one product you made a lot of money on, isn't that probative? Not necessarily. Obviously, there might be success, but the extent to which that success is a measure of the objective indicia of obviousness. Yes, let me see if I can answer that in three points. The first bucket being the acknowledgement by the Board that this was success. So it's important to start there. The Board itself acknowledged this as powerful evidence. Second, though, with respect to the various markets, potentially 400, that's where the doctrine about not requiring patentees to have to show commercial success across all embodiments. This Court has recognized that is a draconian requirement. That's not required. What it's really getting to is whether the evidence shown is a fair representation so that we can extrapolate it across the scope of the claim. And that's where the Board's misunderstanding of the Midwest-Vaco decision comes in. Because in Midwest-Vaco, there was doubt. There was reason to think that the operation of the claim technology in the perfume context was different than the further, broader scope of the generic claims because it was thought that the technology used in that spray dispenser was going to be harmful to a person's skin. And so the market response to the claim technology in that one industry, using it on skin in the perfume context, really did sort of undercut the value of it for across the scope of the claims. We don't have facts like Midwest-Vaco here at all. We don't have any record evidence showing that our claim technology might operate differently in the Class A context versus any other class. We certainly don't have any findings by the Board on that. No, but why is—I don't understand. We're talking about commercial success here. Yes. So, I mean, the Board considered and considered it to be commercial success, but they were just looking at not whether that evidence could be probative but how probative it is when you're dealing with one slice of what's covered by the claims. So, I mean, certainly there could be disagreement as to their fact-finding and they didn't give it as much weight as they should have, but I don't—you seem to be posing this as kind of a legal error and I'm not seeing where the legal error lies. I think the legal error lies right first in the Midwest-Vaco interpretation because Midwest-Vaco was not at all contradicting the prior precedent from this court. It very clearly says that you don't have to show commercial success across all embodiments. And this also isn't just sort of a marginal sector. No, I mean, but I guess we're— I mean, I didn't see the Board said, you have to show this. I mean, this isn't illegal. They looked at—they're weighing the factors here and they're weighing the strength of your commercial success argument. And in that context, why can't they consider how broad it reaches in terms of what's covered by this patent and where the commercial test is shown. So it's just a matter of whether or not, how powerful or how probative that issue of commercial success is. And I guess I'm—so I—would you acknowledge that? Because you kind of make it a stark thing. Like the Board said, no, there's an all or nothing kind of thing and this isn't indicative of anything. And I don't read that the Board is saying that. I understand, Your Honor. Let me respond this way then. Because certainly with Claim 9, if that's what the Board was doing, and I think by reading its application of Midwest-Baco, in our view, feeling constrained to apply that case, but even accepting that what it was doing was sort of looking at is this persuasive enough or how are they weighing it, it didn't look at Claim 9 separately. Did you file a motion for reconsideration on the Claim 9 issue that it was not considered or something? Did you bring that back to the Board? No, I don't believe we did. We appealed to this Court. But it was clearly raised in our briefing. At A1900, you'll see the argument where we separately raised Claim 9. The Board, in a very generic statement at the beginning of its decision, says that we didn't separately argue any claims and it just says C generally, Patent Owner's Brief. There's no suggestion that it acknowledged our footnote and thought that we hadn't raised it sufficiently. So where is that in the record? A1900 is where we raised it. It's in footnote 10 in our brief. And then the very first page, I believe, of the Board's decision. I'm sorry, give me the site again. A1900? Appendix 1900? Okay. Appendix 1900. I'm sorry, I'm still using the old terminology. Appendix 1900 is where we raised Claim 9 separately. And it's a full argument. We said... I see it. I see it. Anywhere else that it was raised? No, Your Honor, but that was a full argument. It's not at all buried among other points. That's the entirety of that argument. And it's a paragraph. It's multiple points. It's maintaining our initial position that I've been presenting to the Board this morning, that the commercial success evidence was sufficient across the scope of the claim. But at minimum, Claim 9 is directly tied to the commercial success evidence we presented because Claim 9 is limited to heavy-duty diesel engines, which maps directly onto Claim 9. And the Board's analysis contradicts itself by having decided that our commercial success evidence was too tailored to exactly the scenario that Claim 9 covers. Well, there are various principles that govern the extent to which one preserves one's arguments based on footnotes. Do you know if the Board has any procedure here? I mean, this document is at least 43 pages, and this is one three-line sentence in a footnote. Do you know...? Your Honor, in our brief, we have a very lengthy footnote, again, because there's so many citations, where the Board repeatedly considers arguments in footnotes. I'm not aware of any principle, and the other side hasn't decided any, that they've adopted a rule like this court that arguments raised by footnote are not sufficient. In fact, the regulations require that claims be separately argued. And again, by separately calling out Claim 9, we did separately argue it. And the Board itself, because of the analysis path that it took, by focusing on sort of market-by-market, which we disagree with because it's really the scope of the claims, not the full scope of the markets. I think it inverted the analysis. But nonetheless, having taken that path, it should have recognized that it mapped directly onto Claim 9. So certainly, with respect to Claim 9, we do believe the Board erred, and we don't... Again, this is administrative review. We don't have any recognition that the Board thought we'd waived it or that it's reached any determination about an insufficient argument. We just have this generic statement that I think they just overlooked Claim 9, particularly as it was germane to their analysis. With respect to the other claims, is your argument that the Board just didn't give commercial success any consideration at all because they overread Midwest-Vaco? Or is your argument that they looked at the weight of the evidence and didn't give it the weight to which you think it deserved? Based on its reading of Midwest-Vaco, we believe there was legal error because it did first find the evidence persuasive. So necessarily to find it persuasive, it seems to have given it weight and recognized that it had value and served exactly the purpose that secondary considerations play. But then applying this Court's decision, it seemed constrained to then say we hadn't done what Midwest-Vaco did, but Midwest-Vaco, again, are not facts like ours at all. There was a... But I don't understand your answer to Judge Lynn because the Board says explicitly, given the issues raised by the requester, draw into question the weight that should be accorded the evidence of commercial success. So how do you read... I don't know. Maybe I've misunderstood what you were answering, Judge Lynn. But they didn't say that commercial success isn't a factor that would be considered and that they wouldn't consider your evidence, that this goes to a matter of how much weight it should be afforded. And that's really not a legal question. It's one we would defer to on substantial evidence. No? So why am I wrong about that? I assume you think I'm wrong. First, with respect to Claim 9, certainly there was, whether it's substantial evidence review or legal error... No, I know. I thought Judge Lynn's questions were directed to the other... I'm sorry. You're right. That is right. I think we may be talking a little bit about semantics. It applied Midwest-Vaco in a way that was not the way... And it read Midwest-Vaco at 821 as having a principle that evidence directed to a very narrow application is insufficient when the relevant market is much broader. That is directly contrary to the precedent that says... Where were you reading from? 821 in the Board's decision. That is... 822? I think you said 822. I can point it out to you in one moment. Maybe it's 822. Yes, excuse me. Sorry, that was my mistake. At the second full... Last sentence of the full paragraph, that under Midwest-Vaco, evidence directed to a very narrow application is insufficient when the relevant market is much broader. That's the opposite of this court's case law that says you don't have to show every embodiment, only if there's some sort of special reason, a technical concern in the embodiment, that it's not really going to be a fair representation. Again, we don't have any findings by the Board. We don't have any evidence by the Board. I'll briefly touch on the... Can I ask you just another thing, and I think maybe... Wasn't commercial success also affected by didn't the Board also make certain findings discounting the extent of commercial success even with respect to Vehicle 8? And they concluded that it appears that at least a portion of that success was affected by other matters. So are you challenging that finding here? Yes, Chief Judge Poston. And that's a factual finding, right? That's not a legal question. We do believe it's legal in the sense that it discounted the sales because they were sales between entities related to a patent owner. This court has repeatedly recognized that a patentee's own sales can demonstrate commercial success. It took a very overly narrow and legally improper view of what kind of evidence could count. But second, in terms of substantial evidence review, what that did was drop our 80%, this overwhelming margin of success, to about 74%, so about 5 or 6 percentage points. And given the Board's determination that it was persuasive, as a legal matter, that couldn't undo that by just a small drop. We still have an overwhelming amount of market success. With regard to the truck aid? Correct. Okay, thank you. Well, we're well into the rebuttals, so why don't we save that and hear from the other side. Okay, thank you, Your Honor. Good morning, Your Honors, and may it please the Court. So I'd like to start with the discussion we've had about whether there was a reason for the Board. Well, before you get to that, would you mind starting with just Claim 9? Of course, Your Honor. So let's turn to the page that was cited in the opposing argument, which is the, I think it's 1900, it was where they cited it, and it's the same footnote. There are two reexaminations here, and the exact same footnote was used in both briefs and both reexaminations. That footnote is two sentences long. The first sentence of that footnote is just restating what Claim 9 says, the relevant part of the footnote. The first part of that sentence isn't even talking about Claim 9. It's talking about the argument with regard to all the claims. The second part just says, here's what Claim 9 says. And then the second sentence is merely a conclusory assertion, starting with the word clearly, that somehow Claim 9 meets the standard. There's no argument here. Certainly not the substantive argument. Yeah, but stepping back a minute, if the Board was relying heavily, or at least in part, on the fact that this Class 8 vehicle was, the commercial success was only shown with respect to this one Class 8 vehicle, whereas a large swath of vehicles are actually covered by the claims, doesn't this reference and shout-out with respect to Claim 9 clearly go to the point the Board was raising? No, Your Honor. No? No, because this particular claim, Claim 9, is not about Class 8 vehicles. If you look at the language of Claim 9, it's about heavy-duty diesel engines, which is not limited to Class 8 vehicles. And let me show you why we know that's the case. Let's turn to the patent itself. The patent itself, and this is in the appendix, Your Honor, and I'll use the 747 patent, even though they both have the same specification. So if we could turn to page 328 of the appendix, that's the 747 patent. And then turn to page 335, which is column 2 of that 747 patent. So page 335 of the appendix, column 2, this is starting at line 13. It discusses where there are particular applications. And it does say that there's a particular application to heavy-duty diesel engines. So that's the Claim 9 language. And then it says, especially vehicle engines. So we know that Claim 9 is broader than vehicle engines. And then it says, for example, truck or bus engines. So we know that vehicle engines is larger than truck or bus engines. And then their evidence actually went to a particular type of truck engine, this particular Class 8. And let me tell you why that's critically important. Because the board made a specific comment on that.  And this is in the board's decision. On page 23, in the first full paragraph, the last sentence, the board says, the patent owners state that it chose Class 8 heavy-duty vehicles, quote, because they are the largest class of trucks in the United States, and because of their size, it is hardest to design emissions control systems to meet EPA 10 for Class 8 trucks, period. So the board relied on the admission of the appellant that Class 8 trucks were very special, that they are different than other types of trucks, that they're different than other types of heavy-duty engine applications of this engine. Not only did the board have a reason to distinguish the Class 8 data from the overall data for these claims, its reason was an admission by the appellant that it's different. Do the Class 8 trucks as a group contain heavy-duty diesel engines? I don't believe the record establishes that all Class 8 trucks include heavy-duty diesel engines. There is in the, I believe, the expert declarations, the appellant's experts did opine that they did, and there's nothing contradicting that in the evidence, Your Honor. What about the final point your friend made about the error of law with respect to the slicing and dicing the 21% and what portion of this is attributable to? Your Honor, that was part of the overall factual analysis here of the board. So, you know, it was part of the overall weighing process, but it is not a legal error. What the appellants pointed to was that you take into account the patentee's sales. Of course you take into account the patentee's sales. I mean, the whole point of commercial success is that the patentee was very successful, so those sales matter. Here, it's not a question of the patentee's sales. It's a question of the patentee's control over the customers, over the ones buying, not the seller, the buyer. And looking at secondary considerations in commercial success, it is, of course, important to note that maybe those buyers were buying not because of how great the invention was, but because they were controlled by the seller. So it was not a legal error to take that into account. The board had substantial evidence. And I will note one other point that was very important to the board's analysis that isn't contested at all today or even effectively in the briefs, and that is the board said, you have an obviousness priority date of 1998. More than a decade later, in fact, 13 years later, you give me some evidence about the market in 2011. The only evidence appellants gave here about commercial success was from 2011. So 13 years after the date where we're trying to figure out whether it would have been obvious, you say, oh, we have this great commercial success, which was only one year after the very regulations that they admit drove this market situation. The board certainly had substantial evidence to discount the weight of this commercial success in view of its lack of relationship to the actual priority date when obviousness is determined. There was an intervening event, which was these regulations in 2010 specific to Class A trucks, which explained the commercial success, not the invention, the intervening regulation. That's exactly the type of factual determination that the board has within its power to make. Now, with regard to, I do want to address that claim nine point because I think it is important that we take into account that the board should not, based on a conclusory footnote, have to do separate analysis of any claim that a patentee drops one footnote that just gives the claim language and says clearly and gives a conclusion. If that were the case, patentees could put in that type of footnote for all of their dependent claims, and all of a sudden the board would have this obligation. And this is especially true when- But it does seem like an oversight, or at least an oversight. They talk about Class A as being relating to heavy-duty diesel trucks. Claim nine talks about trucks that have heavy-duty diesel engines. And yet there's not even a sentence in passing. First of all, I would note claim nine is not limited to trucks. If you look at claim nine, there's no limitation to trucks. And that's important for the reason I pointed out in the patent because the patent itself acknowledges that heavy-duty diesel engines are not just used in vehicles. They're not even just used in trucks. So there's a big distinction there, and it's acknowledged in the patent. Secondly, I would point out that the board's analysis makes perfect sense because the board starts their opinion by saying claim one is represented. And if you look at the board's opinion, if they had disagreed with that, they could have moved for reconsideration and said, no, you're wrong. Yeah, I mean, that does give one reason for pause, but they're not required to do that. So there's nothing to hang your hat on. If they had made a sufficient argument under this court's precedent to preserve that issue, I agree with you, Chief Justice Brooks. They wouldn't be required to do that. But when you put in a two-sentence footnote that has no analysis, just a conclusion, and then the board says, we're treating claim one as representative, and you don't say anything, I do think the board is within its discretion and should not be tasked with having to address any claims where the patentee just drops a one- or two-sentence footnote with a conclusionary assertion. The board should at least have that discretion, and it does under this court's law. This court has said agencies do not have to address conclusory arguments where those arguments are not made with a full argument illustration of the argument. This footnote 10 for claim nine definitely meets that standard. The board should not have to reach there. But I do want to point out that the regulation in 2010 that the board found showed the commercial success wasn't about the invention. It was about this regulation. That applies equally to claim nine. Claim nine is all about a regulation of these class A drugs. So, of course, if the board had said, well, here's claim nine, their same analysis would have applied because that regulation was specific to those drugs. And it was that regulation, which had been one year before the only data that they had given us, was much more likely, even under a preponderance of the evidence test, it would be much more likely that that regulation caused this success than that the success was due to a combination applied for 13 years prior as of the priority date. That's the kind of weighing that the board is supposed to do. They look at the initial proposal. And the board said, look, if this was the only thing in the record, maybe we would have gone for it. Maybe it would have been important. That doesn't mean they found it being persuasive. That means that they found in the hypothetical of us only looking at the appellant's evidence, we would have found it to have more weight. Certainly. That only shows that the petitioner put forward a good rebuttal. And that good rebuttal is established on substantial evidence, which is the review standard that we should apply here today. Overall, what this case presents is a situation of known technologies being used for their known effects and putting them together. The board found not only that you could combine a particulate filter with an oxidation catalyst and that you could combine an SCR subsystem with an oxidation catalyst, but it even found, and this is on appendix page 5, that you could combine the filter with the SCR subsystem. That's the last sentence on page 5. So we've got two different things we need to combine and a teaching in the art, which is the Bell reference, and it's cited on page 5, that the board found had not been contested or disputed by the patent owner. And that's on page 6 at the end of that paragraph. They say, look, all of these findings are not disputed by the patent owner. So in a situation where we not only have the KSR facts of each piece is being used for its intended purpose, none of that's disputed by the patent owner in terms of the prior art, and you have the prior art teaching and taking all the different pieces and saying these can all be used together, that's the type of situation where the board has substantial evidence. There's no error in that finding. And as to these objective evidence, because the board took into account all of the evidence, not just appellate's evidence, but the evidence put forward by petitioner and weighted and found it just didn't outweigh a primothasia case that was very strong, this court should affirm it. If judges have no further questions, I'll let it go. Thank you. Thank you for the additional time, Your Honor. Let me point out that on page 23 of our gray brief in footnote 4, that's where we noted that the board repeatedly considers arguments raised in footnotes. With respect to the point about seeking motion for reconsideration, let me make the point that the patents expire in 2019. It didn't have to seek reconsideration, and a timely review was important. What's critical about the board's failure on Claim 9 is that, no, it doesn't have to address every argument that's made by a party, but it certainly can't enter reasonings that contradict itself and that contradict Claim 9. That does completely set apart that we did separately raise Claim 9. And then my final point would be where opposing counsel touched on the primothasia case. There, the board did expressly ignore an entire argument that we presented in our briefs. At 3508 of the appendix, you'll see part of our table of contents where we called out many other options to try, and we spent four pages detailing different ways that you could combine different types of technology beyond the two categories that the board considered. The board took a very KSR-like approach by saying, what we have before us is SCR and particulate trap, and then we need to figure out how to put them together. That's not what faced the person of ordinary skill in the art. We told the board there were seven different ways to treat NOx. There were six different ways to treat particulate matter. There were different orders. We use an oxidation catalyst that has two purposes, and the catalyst plus the trap makes sure that there's enough NO2 out of that second mechanism out of the trap after the oxidation catalyst to ensure that the SCR is going to work. It's not a simple mechanical putting together. There are complicated chemical technologies involved, and the board entirely missed that argument. So it missed both. On the secondary considerations, it not only missed our argument of footnote 10, but it decided the issue in a way that contradicted its own findings that Claim 9 is commensurate in scope with Class 8. And then a final point on Claim 9, it is limited to vehicle applications. It depends from Claim 8, which distinguishes vehicle, ships, and stationary sources. So certainly Claim 9, under the board's own reasoning, is reasonably commensurate in scope with the commercial success evidence. Thank you. We thank both sides, and the case is submitted.